## N THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE MAYER-PERRI, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FAY SERVICING, LLC a Delaware corporation.<br><br>    Defendant. | Civil Action No.:<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### I.  INTRODUCTION

1.    Defendant, Fay Servicing LLC is a national non-bank mortgage servicer, providing third-party servicing for distressed and non-traditional residential mortgage loans.  When a residential mortgage servicer acquires an account already in default, it becomes a "debt collector" under federal and Pennsylvania law, and therefore subject to the restrictions imposed generally on all debt collectors.

2.    Indeed, in the monthly mortgage statements it sends to mortgage holders, Fay includes the standard mini-*Miranda* language used by debt collectors: "This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose.  This notice is required by the provisions of the Fair Debt Collection Practices Act…"

3.     Once a homeowner defaults on their mortgage, Fay orders monthly property inspections for delinquent accounts and places a corresponding charge for that property inspection on the homeowner's monthly mortgage statement. This recurring monthly fee is added to the debt the homeowner must pay to extinguish the mortgage and/or avoid foreclosure.

4.     In so doing, Fay includes the following statement on reverse side of its monthly mortgage statement sent to the homeowner:

> **PROPERTY INSPECTIONS**
>
> If your loan account is in default, in accordance with the terms of your Mortgage/Deed of Trust, Fay Servicing, LLC may inspect your property to determine that it is being maintained and occupied.  As needed or required, Fay Servicing LLC may secure the property.  Securing the property may result in locks being added or changed in an effort to protect the property and may also include winterizing and/or mowing the property as necessary. Any fees for such an inspection and/or property may be charged to your account.

5.     Despite the claim that it is the "terms of [the homeowner's] Mortgage / Deed of Trust" that permit Fay to order these inspections and bill the homeowner the corresponding fees, Fay does nothing to confirm that the underlying mortgage documents permit such inspections or the levying of such fees.

6.     Indeed, in the case of Named Plaintiff JoAnne Mayer-Perri, her mortgage documents expressly limit such inspections to occur *only* after written

notice is delivered to her either by hand or certified mail specifying the reasonable cause for such an inspection.  Fay never gave Plaintiff Mayer-Perri any notice, let alone one hand delivered or by certified mail. Instead, Fay began adding property inspection charges to her mortgage statement in April 2021, sometimes multiple inspection charges just days apart.  Fay continues to impose these improper inspection charges today under the misrepresentation that Plaintiff's mortgage documents grant Fay *carte blanche* authority to do so.

7.      Between April 2021 and February 2024—a 34-month period—Defendant billed Plaintiff more than $700 for 32 inspections, all without the required notice specifying the reasonable cause.

8.      Plaintiff has filed this case as a class action, seeking actual and statutory damages for a class of similarly situated homeowners who, like her, have been subjected to illegal debt collection activities related to improper inspection charges.

## II.   JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with regard to the federal claim raised by Plaintiff; pursuant to 28 U.S.C. 1332(d)(2), since there are at least hundreds, if not thousands, of class members in the proposed class, the combined claims of proposed class members exceed $5,000,000 exclusive of interest and costs, and the class members are citizens of states other than Defendant's state of citizenship, which is Delaware.

10.     This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in this District, the Defendant is registered to do business in this District, Defendant has sufficient minimum contacts with this District, and/or the Defendant intentionally availed itself of the markets in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the named Plaintiff resides here, because the Defendant has hundreds, if not thousands, of customers in this District, because Defendant receives substantial fees from Borrowers in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III.  PARTIES

12.     Plaintiff Jo Anne Mayer-Perri is the adminstratrix of the Estate of Eleanor F. Mayer, through which she owns a Pennsylvania home in Jessup, Pennsylvania.

13.     Defendant, Fay Servicing LLC,  is a mortgage servicer formed pursuant to Delaware law with its headquarters in Tampa, Florida.

## IV.  BACKGROUND
### A. Mortgage Servicers Generally

14.     Mortgage loan servicers, like Fay, have the legal responsibility for managing individual mortgage accounts—including the collection of payments,

communicating with borrowers and, if necessary, instituting foreclosure proceedings. The servicer acts as the agent of the investment trust which owns the mortgages.

15.   It is the servicer that bills the borrowers and collects the interest and principal payments. Generally, servicers are responsible to advance interest and/or principal to the investment trust, regardless of the payments made by individual borrowers. The servicer also advances whatever costs arise in managing the individual accounts, including, if necessary, the costs of foreclosure. The servicer is reimbursed for all of these advances off the top of any proceeds of a foreclosure sale.

16.   Servicers have four main sources of income with regard to a particular pool of securitized mortgages, including:

- a monthly "servicing fee," which is a fixed percentage of the aggregate, unpaid principal balance of all the loans in the pool;

- late charges and other fees charged to borrowers in default;

- float income from the interest earned on funds held for the trust and

- investment income from interests owned by the servicer itself in the securities issued by the investment trust.

**B. Form Mortgage Documents**

17.   Form mortgage contracts have become common place throughout the industry over the past decade.  These form documents commonly give the mortgagee the right to protect its collateral by ensuring that the mortgaged property is not

deteriorating or being damaged. This would include the right to order an inspection of the property when the mortgagee has reason to believe the property is at risk and the right to be reimbursed by the mortgagor for the reasonable cost of an inspection.

18.     However, the language granting such rights has evolved over years giving the mortgagee greater rights to both order inspections and impose fees on the homeowners. Older, form mortgage documents did not give mortgage servicers *carte blanche* to order and bill homeowners for such inspections.

19.     The form mortgage document used in the instant matter is identified in the lower lefthand corner as "09-20-99 MTG." (Mortgage Agreement attached as Exhibit A).

20.     Paragraph 7 of form "09-20-99 MTG" provides that for "Protection of Lender's Security" in that if the borrower fails to perform the covenants and agreements contained in the mortgage, "then Lender, at Lender's option, ***upon notice to Borrower***, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as necessary to protect Lender's interest." Exhibit A at 3, ¶7 (emphasis added).

21.     Paragraph 8 of form "09-20-99 MTG," provides the conditions under which the lender can order and/or perform an inspection of the property. Specifically, the form states:

**Inspection**. Lender may take or cause to be made reasonable entries upon and inspections of the Property, provided that Lender *shall give Borrower notice* prior to any such inspection *specifying reasonable cause therefore* related to Lender's interest in the Property.

Exhibit A at 3, ¶8 (emphasis added).

22.    Paragraph 12 of form "09-20-99 MTG" relates specifically to the notice the lender is required to provide the borrower.  Paragraph 12 states:

**Notice**. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage *shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower* at the Property Address or at such other address the Borrower may designate by notice to Lender as provided herein….

Exhibit A at 4, ¶12

23.    As such, to conduct a property inspection and levy the charges for the inspection to the borrower, in accordance with the requirement of form "09-20-99 MTG," Fay was required to give the borrower notice prior to any inspection, which specified the reasonable cause for the inspection. That notice was to be delivered to the borrower in person or by certified mail to the property address or to the borrower's designee.

24.    Despite these unambiguous requirements in form document "09-20-00 MTG,"  Fay included the following language on the reverse side of its monthly mortgage statements regarding property inspections:

### PROPERTY INSPECTIONS

If your loan account is in default, *in accordance with the terms of your Mortgage/Deed of Trust, Fay Servicing, LLC may inspect your property to determine that it is being maintained and occupied.* As needed or required, Fay Servicing LLC may secure the property. Securing the property may result in locks being added or changed in an effort to protect the property and may also include winterizing and/or mowing the property as necessary. *Any fees for such an inspection and/or property may be charged to your account.*

25.    This statement is an overt misrepresentation to homeowners about Fay's authority to conduct and charge for such property inspections. There is no clause in "09-20-99 MTG" that gives Fay the automatic right to conduct inspections and levy charges for those inspections on the borrowers account. Inspections may only be performed after "notice" is delivered by hand or certified mail and only after Fay specifies in that notice the "reasonable cause" for the inspection. Exhibit A, ¶¶7-9.

### C. Facts Pertaining to Plaintiff Joanne Mayer-Perri

26.    On November 11, 1999, Plaintiff's parents, Joseph G. Mayer and Eleanor F. Mayer, entered into a mortgage agreement with Household Finance Consumer Discount Company. See Exhibit A; (Loan Repayment and Security Agreement attached as Exhibit B). The loan amount was $104,553.90, in addition to a fee of $7,576.66, which was repayable in 300 monthly payments (25 years) at an interest rate of 11.203%. The total loan amount was $112,130.56. *Id*.

27.    The Loan  Repayment and Security Agreement (Exhibit B) does not have any additional language regarding property inspections and/or the levying of associated fees for such inspections in the event of default.

28.    Joseph G. Mayer died on September 1, 2009, leaving his wife Eleanor Mayer, solely responsible for the mortgage.

29.    In or around late 2016, Eleanor Mayer received a discharge of debt in a Chapter 13 Bankruptcy proceeding.  The mortgage on the Mayer property remained valid, as the security interest survived the bankruptcy discharge.

30.    On January 5, 2017, Eleanor Mayer, and Plaintiff Joanne Mayer-Perri, acting as power of attorney, entered into a loan modification agreement with Caliber Home Loans.  (Loan Modification Agreement attached as Exhibit C).[1]

31.    The loan modification agreement set the unpaid principal balance of the original  $112,130.56 loan, at $88,503.45, included a 39-year re-payment period, or until December 28, 2056, at an interest rate of 1.375%. *Id*. The modification also included a deferred amount of $66,830.56, which is due and owed in full on the loan's maturity date, December 28, 2056. *Id*.

32.    The Loan Modification Agreement (Exhibit C) does not contain any

---

[1] Even though Joseph Mayer had been dead for nearly eight years, his name is on the modification agreement and his wife signed the document on his behalf.

language regarding the right to perform property inspections or the payment of associated fees. *Id*. The loan modification just states that in the event of default, "under the terms of this Agreement or the Security Instrument, Servicer may exercise its rights against the Property, in accordance with the terms set forth in the [original] Security Instrument [Exhibit B]." *Id*. at 3, ¶3.

33.    Eleanore Mayer died on November 19, 2017.  Her daughter, Plaintiff Joanne Mayer-Perri, was named the administratrix of her estate and took legal possession of the property subjected to the loan modification agreement. Plaintiff Mayer-Perri resides at the property, full-time, and has maintained it in due course since her mother's death.

34.    In February 2021, Plaintiff Mayer-Perri became delinquent on the mortgage.  In or around March 2021, Caliber Home Loans transferred and/or assigned mortgage servicer responsibility for Plaintiff's mortgage to Defendant Fay Servicing, LLC.

35.    Without any notice as required by "09-20-99 MTG," in May 2021, Fay Servicing added to Plaintiff's mortgage statement a $20 charge for "Recoverable Corporate Advances."  On the reverse of the mortgage statement that $20 fee is associated with the description "Property Inspection Fee."

36.    Between April 12, 2021, and February 12, 2024, a period of 34 months,

Defendant conducted 32 inspections of Plaintiff's property without any notice as required by "09-20-99 MTG," let alone notice "specifying reasonable cause" for the need for these inspections or that the charges for these inspections would be added to her indebtedness. All told, Defendant billed Plaintiff more than $700 for these impermissible inspections.

37.    On information and belief, Defendant charges these inspection fees automatically using mortgage servicing software and without regard to any actual concern about Plaintiff's property. In one telling example, on Plaintiff's August 10, 2023, Mortgage Statement, the $30 inspection fee was levied on the exact same day the statement was printed, August 10, 2023.

38.    On her February 12, 2024, mortgage statement, there are two $30 "Property Inspection Fee" charges, one dated January 22, 2024, and the other February 8, 2024, just 17 days apart.

39.    On August 4, 2022, U.S Bank Trust National Association, as the Trustee of LSF9 Master Participation Trust, filed a foreclosure action against Plaintiff in the Lackawanna County Court of Common Pleas.  Case No. 2022-cv-3161 (Lack. Cty.). U.S Bank Trust National Association is the current holder of Plaintiff's mortgage.

40.    On May 30, 2024, U.S Bank Trust National Association filed a Motion for Summary Judgment in the foreclosure action in which it attached as an exhibit a

schedule of fees, charges, and payments both levied by Fay and submitted by Plaintiff, which includes the property inspections fees. (Schedule attached as Exhibit D). U.S Bank Trust National Association, in its motion, requests that the court award it the fees associated with the improper property inspections.

41.    Plaintiff retained separate counsel in the foreclosure action who she is paying hourly.

**D. Facts Pertaining to the Class**

42.    Fay services its mortgages using software that automates much of the servicing operation.

43.    Upon information and belief, among the features built into the design of the servicing software is that property inspection are automatically ordered.

44.    These inspection requests are generated automatically, without regard for the mortgagee's rights described in the particular underlying mortgage contract, such as "09-20-99 MTG."

45.    Every month, these accounts are automatically charged for the property inspection.

46.    For the most part, any reports made regarding these inspections are not read or relied on in the course of any routine servicing decisions Fay makes.

47.    The property inspection fees are solely to generate net income for Fay.

48.    The property inspection charges imposed on Plaintiff's account were imposed as a result of these system-wide practices and procedures, not because of any facts unique to Plaintiff.

**E. Fay's History of Legal Troubles**

49.    Defendant Fay has been subject to various investigations and consent decrees based on deceptive practices related to its foreclosure practices. In June 2017, Fay entered a Consent Order with the U.S. Consumer Financial Protection Bureau related to its handling of loss-mitigation applications and its failure to implement foreclosure protections required to be afforded borrowers engaged in the loss-mitigation process. *In the matter of Fay Servicing, LLC*, No. 2017-CFPB-0014 (Dkt. No. 1). In that matter, Fay agreed to pay $1.15 million to provide redress to affected consumers.

50.    In August 2022, Fay  agreed to pay $3.2 million to Massachusetts homeowners in a settlement with the state's attorney general.  In that case, the Massachusetts AG alleged that Fay engaged in unfair and deceptive conduct through its mortgage servicing, debt collection, and foreclosure practices.[2]

51.    The  Massachusetts  AG  specifically  alleged  that  Fay  "charged

---

[2] August 17, 2022 Press Release available at: https://www.mass.gov/news/national-mortgage-servicer-to-provide-32-million-in-relief-to-massachusetts-homeowners-in-settlement-with-ags-office (last visited July 9, 2024).

foreclosure-related fees before obtaining authority to foreclose." *Id.*

## V.  CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following class and sub-class:

> **National Class**
>
> All individuals in the United States who were charged property inspection fees by Fay Servicing LLC whose form mortgage agreements do not permit inspections or the levying of fees without proper notice.
>
> **Pennsylvania Sub-Class**
>
> All residents of the Commonwealth of Pennsylvania who were charged property inspection fees by Fay Servicing LLC whose form mortgage agreements do not permit inspections of the levying of fees without proper notice.

53.    Both classes are so numerous as to make it impracticable to bring all members before the Court. Plaintiff believes that there are thousands, perhaps tens of thousands, citizens who were improperly charged for property inspections. The exact number of members is unknown but can be determined from records maintained by the Defendant. In many instances, such persons are unaware that claims exist on their behalf. If the Class members have knowledge of their claims, their damages are in such amounts that when taken individually are too small to justify the expense of a separate lawsuit. However, on a class-wide basis, the total

damages are in an amount that makes litigation financially feasible.

54.     There are common questions of law and fact that affect the rights of each member of the Classes. Among the predominating common questions of fact and law are the following:

a.     Whether Fay performs any analysis of mortgage documents to ensure compliance with their terms prior to performing and/or billing for property inspections;

b.     How Fay designed its servicing platform with regard to property inspections and its reasons for doing so;

c.     Whether the property inspections Fay bills for are actually performed;

d.     Who performs property inspections for Fay and how Fay uses inspection reports pre-foreclosure, to the extent it uses them at all;

e.     Whether Fay's conduct violated the FDCPA or the FCEUA;

f.     Whether Fay has been unjustly enriched;

g.     Whether Plaintiff and the Class members are entitled to damages, actual and/or statutory; and

h.     Whether Plaintiff and Pennsylvania Sub-Class are entitled to trebling of their actual damages.

55.      The claims of the representative plaintiff are typical of the claims of the Classes because Plaintiff and the members of the Classes were charged for property inspection fees by Fay.

56.     The representative plaintiff will assure the adequate representation of all members of the Classes and has no conflict with Class members in the

maintenance of this class action. The plaintiff's claims are typical of the claims of the Class members.

57.    Plaintiff has retained counsel who are experienced in litigating class actions, have handled many class actions in state and federal courts and will adequately represent the interests of the Class.

58.    Questions of law and fact common to class members predominate over any questions affecting only individual members.

59.    A class action is the superior method of fairly and efficiently adjudicating this controversy.

## VI.  CAUSES OF ACTION

### COUNT I

**Violation of the FDCPA, 15 U.S.C. §§1692e and 1692f,
for Improper Property Inspection Charges**

**(Seeking Actual and Statutory Damages on Behalf of
the Nationwide Class)**

60.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61.    Plaintiff is a "consumer" within the meaning of section 1692a(3) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3).

62.    With regard to the accounts of Plaintiff and the members of the Class, Defendant is a "debt collector" within the meaning of section 1692a(6) of the

FDCPA, 15 U.S.C. § 1692a(6).

63.    The property inspection charges Defendant improperly seeks to collect are "debts" within the meaning of section 1692a(5) of the FDCPA, 15 U.S.C. § 1692a(5) because they are alleged obligations of consumers to pay money arising out of transactions of the type described in section 1692a(5).

64.    Defendant's systematic practices with regard to property inspections constitute a collection of, or attempt to collect, amounts not expressly authorized by the applicable mortgage agreements, in violation of 15 U.S.C. § 1692f(1), for among the following reasons:

   a. Defendant is imposing property inspection charges without following the procedures set forth in the underlying mortgage documents;

   b. By automatically ordering monthly property inspections without regard to the circumstance and strictly to generate additional revenue.

65.    Defendant's systematic practices with regard to property inspections constitute a uniform and standardized false representation of the character, amount or legal status of property inspection charges owed by Plaintiff and the Class, in violation of 15 U.S.C. § 1692e(2):

66.    Defendant falsely represents in its standardized billing statements that these inspections are performed "in accordance with the terms of your Mortgage / Deed of Trust" when, in fact, the underlying mortgages have limitations on when such inspections can be performed including the requirement of advanced notice and

a specific reason the property inspection is needed. Defendant makes this specific representation without actually ascertaining what the relevant loan documents provide.

67.     As a result of the foregoing violations of the FDCPA, with regard to Class Members whose accounts were charged property inspection fees from the period one year prior to the filing of this action until the date of class certification, Defendants are liable to the Plaintiff and members of the Class, for actual damages, the sum of all property inspection charges, plus costs and attorneys' fees, as provided by 15 U.S.C. § 1692k, as well as for statutory damages not exceeding $1,000 individually, or $500,000 in the aggregate, plus costs and attorneys' fees, as provided by 15 U.S.C. § 1692k.

## COUNT II
### Breach of Contract
### On Behalf of the National Class

68.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69.     Defendant Fay, as a mortgage servicer, is bound by the terms and conditions of the mortgage documents for each mortgagee.

70.     Defendant Fay breached the terms of the mortgage document when it improperly conducted property inspections and billed homeowners for the associated fees, without complying with the mortgage's terms and conditions.

18

71.     As a result of this breach, Plaintiff and the National Class have suffered damages in the amounts Fay improperly billed for property inspections.

## COUNT III
### Violation of the FCEUA, 73 P.S. § 2270.1 *et seq.,*
### <u>On Behalf of the Pennsylvania Sub-Class</u>

72.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

73.     Defendant is a "debt collector" as defined by section 2270.3 of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §2270.3.

74.     Plaintiff and members of the Sub-Class are "debtors" as defined by 73 P.S. § 2270.3.

75.     The property inspection charges Defendant improperly seeks to collect are "debts" as defined by 73 P.S. § 2270.3, because they are alleged obligations of consumers to pay money within the meaning of 73 P.S. § 2270.3.

76.     Pursuant to 73 P.S. §2270.4(a), any violation by a debt collector of the FDCPA is a violation of the FCEUA.

77.     As set forth in Count I of this Complaint, Defendant's imposition of property inspection fees and its representations relating to these fees violated sections 1692e and 1692f of the FDCPA.

78.     Debt collection violations under the FCEUA are remedied under the

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq., see* 73 P.S. §2270.5, entitling those who prove a violation of the FCEUA to the remedy of three times the amount of economic loss suffered, not less than $100 per individual, plus attorney's fees. *See* 73 P.S. § 201-9.2.

79.     As a result of the above-described debt-collection conduct, Defendant is liable to Plaintiff and members of the Class in the amount three times any property inspection charges imposed on them, but not less than $100, plus reasonable attorney's fees and costs.

## COUNT IV
### Unjust Enrichment
### (In the alternative, on Behalf of the Pennsylvania Sub-Class only)

80.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

81.     Without regard to the provisions contained in individual mortgage contracts, Defendant has been and continue to assess such charges, in furtherance of their own fee-generating motives.

82.     Because Defendant was not and are not authorized to collect and retain these charges, it would be unjust to allow Defendant to retain them.

83.     Under the doctrine of unjust enrichment, Defendant is liable to the Pennsylvania sub-Class for the improper inspection charges which they have unlawfully collected.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as set forth above and also as follows:

a. An Order certifying and directing notice to the Class identified, pursuant to Rule 23 of the Federal Rules of Civil Procedure,

b.  An Order appointing Plaintiff and Plaintiff's counsel to represent the Class;

c. Actual and statutory damages for the Class under the FDCPA;

d. Treble damages for the Class under the FCEUA, UTPCPL and Act

e. An award of reasonable attorney's fees and costs; and

f. Such other relief as the Court deems appropriate and just.

## VIII.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable under the law.

Respectfully submitted,

Dated: July 15, 2024          By:   */s/ Patrick Howard*
Patrick Howard (Atty. ID #88572)
Simon B. Paris
**SALTZ MONGELUZZI**
**& BENDESKY, PC**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Telephone:  (215) 575-3986
phoward@smbb.com
sparis@smbb.com